******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BEACH, J., concurring in part and dissenting in part. I respectfully dissent from the majority's holding in part I of its opinion, in which it concludes that the state did not adduce sufficient evidence to convict the defendant, Lorenzo Adams, of attempted larceny in the sixth degree. I agree with the exposition of the applicable law, but nonetheless believe that, viewed in the light most favorable to sustaining the conclusion of the trial court, the evidence is sufficient to support the defendant's conviction of that offense.

As noted by both the trial court and the majority opinion, the images produced by the surveillance camera are critical to the analysis.[1] The flow of the images is somewhat difficult to follow, because the format is a series of photographs taken a second or two apart. Nonetheless, the overall scenario is fairly clear. A notation of time appears with each photograph. The images began at 19:05:51, or about 7:06 p.m., and showed the defendant standing behind a rack of jackets. Twenty seconds later he removed a jacket from the rack and, apparently holding nothing else, he walked around displays of merchandise to a corner of the store. The displays of merchandise screened most of his body from the camera, but he clearly bent over several times. He emerged without the jacket, and for several minutes he walked to different locations in the store. He consistently returned to the same corner and ducked down. At about 7:13 p.m. he tucked an item of merchandise under his arm and returned to the corner, again ducking down. He emerged holding nothing, and went to different places in the store. At about 7:20 p.m. he emerged holding a large plastic bag bulging with items. He stopped by a display counter and apparently put one or more items in the bag. At about 7:23 p.m. he walked down an aisle with the bulging bag, avoided the checkout lanes, and began to go through the exit area. At that point, two loss prevention officers for Marshalls confronted him. The surveillance and other evidence indicated that the defendant physically resisted apprehension and attempted flight. Marshalls loss prevention officers reported to the investigating officers the approximate value of the goods in the bag.

The majority holds that there was insufficient evidence to prove beyond a reasonable doubt that the items in the bag were items that belonged to Marshalls; the opinion states that "there is no evidence that the items that the defendant tried to exit Marshalls with belonged to the store . . . . It is entirely conceivable that the defendant entered Marshalls with the bag, and that the bag contained items from somewhere else."[2] I disagree with the statement that there is no evidence that the items in the bag belonged to Marshalls; the

inference that the defendant was engaged in the process of collecting items from the store and placing them in the bag was perfectly plausible and permissibly persuasive. There is, of course, an alternative hypothesis of innocence consistent with the facts found by the court: the defendant brought into the store a bag fully stuffed with items not belonging to Marshalls and left the bag in a corner while he went to various places in the store; he returned to the bag several times, sometimes carrying items which were not in his hands when he emerged from the corner, and he left those items somewhere other than inside the bag. To continue this hypothesis of innocence: despite the defendant's innocent though unusual behavior, he was confrontational when apprehended, he tried to flee, and the loss prevention officers speculated that the value of the items "was approximately $979 and change," even though the bag did not contain items belonging to Marshalls. In my view, the court's conclusion of guilt was amply supported by the evidence. Accordingly, I would affirm the judgment of the trial court.

For the foregoing reasons, I respectfully dissent in part.

[1] The images are preserved on a DVD in the court file as an exhibit.

[2] I agree that there was no evidence as to whether the defendant brought an empty bag into the store.